UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA



CIVIL MINUTES - GENERAL

PRIORITY SEND

Case No.  CV 04-9028 DSF (Ex)                                  Date: January 10, 2005

Title: Toyota Jidosha Kabushiki Kaisha, et al. v. Natural Health Trends Corp., et al.

Present: The Honorable  DALE S. FISCHER, United States District Judge

| Paul D. Pierson | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:**     (In Chambers) ORDER DENYING DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Defendants' Notice of Motion and Memorandum of Law in Support of Motion to Dismiss the Complaint ("Motion") were filed December 6, 2004. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss the Complaint ("Opposition") was filed December 27, 2004.

The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The hearing set for January 10, 2005 is removed from the Court's calendar. For the reasons discussed below, the Court DENIES Defendants' Motion to Dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal of a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal is appropriate only if the plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a motion to dismiss, the court must accept as true all material factual allegations in the complaint and must construe them in the light most favorable to the plaintiff. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1997). However, the court is not bound to assume the truth of legal conclusions merely because they are stated in the form of factual allegations. W.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). A complaint "must contain only a short and plain statement of the claim showing that the pleader is entitled to relief." Maduka v. Sunrise Hospital, 375 F.3d 909, 912 (2004) (quoting Swierkiewicz v. Sorema, 534 U.S. 506, 508 (2002)).

### III. FACTUAL ALLEGATIONS

Long prior to the acts complained of in this suit, Plaintiffs Toyota Jidosha Kabushiki Kaisha (d/b/a Toyota Motor Corp.) and Toyota Motor Sales, U.S.A., Inc.[1] commenced use of the inherently distinctive word LEXUS as a trademark for automobiles, structural parts, and accessories. Compl. ¶ 9.[2] Toyota also commenced use of the word LEXUS as a service mark for automotive repair, maintenance, and financing services. Id. Toyota has continuously used LEXUS as a mark and trade name in interstate commerce since 1989. ¶¶ 9, 34. Since 1989 sales of LEXUS automobiles, structural parts, accessories, and related services have exceeded fifty billion dollars in the United States. ¶ 10.

As a result of the extensive and substantial advertising efforts of Toyota under the mark LEXUS, and the maintenance of premium quality standards, the mark is well and favorably known to the general public. ¶ 11. The mark is a distinctive indication of origin and had become a famous mark before Defendants' first use of the trade name and mark LEXXUS. Id.

Toyota Motor Corp. registered LEXUS as a trademark for automobiles in the United States Patent and Trademark Office ("USPTO") under Registration No. 1,574,718, which was issued on January 2, 1990. ¶ 12. Toyota Motor Corp. registered LEXUS as a service mark for repair and maintenance services for automotive vehicles in the USPTO under Registration No. 1,675,339, which was issued on February 11, 1992. ¶ 13. Toyota Motor Corp. registered LEXUS as a service mark for financing the purchase and lease of automobiles in the USPTO under Registration No. 1,739,201, which was issued on December 8, 1992. ¶ 14.

Toyota Motor Corp. registered LEXUS & Design as trademark for cellular telephones in the USPTO under Registration No. 1,814,753, which was issued on January 4, 1994. ¶ 15. Toyota Motor Corp. registered LEXUS & Design as a trademark for key rings, sunglasses, automatic units for storing and dialing telephone numbers, binoculars, CD holders, clocks, ballpoint pens, umbrellas, attaché cases, drinking cups, jackets,

---

[1] The Court refers to Plaintiffs collectively as "Toyota."

[2] Citations to Toyota's Complaint are by paragraph number only. The Court accepts these allegations, as it must, for this Motion only.

sweatshirts, caps, sweaters, polo shirts, sport shirts, pullovers, windbreakers, visors, golf shirts, crewnecks, golf balls, golf bags, golf bag travel covers, golf club head covers, and golf ball spotters in the USPTO under Registration No. 1,834,147, which was issued on May 3, 1994. ¶ 16.

Toyota Motor Corp. registered LEXUS EXTRA CARE as a service mark for administration of financial and insurance agreements providing for repairs of automotive vehicles, towing, gas delivery, flat tire service, reimbursement for substitute transportation, lodging and meals, and motor vehicle insurance underwriting in the USPTO under Registration No. 1,871,549, which was issued on January 3, 1995. ¶ 17. Toyota Motor Corp. registered LEXUS CUSTOM TAILORED LEASE as a service mark for vehicle leasing services in the USPTO under Registration No. 2,016,802, which was issued on November 19, 1996. ¶ 18. Toyota Motor Corp. registered LEXUS FINANCIAL SERVICES as a service mark for financing the purchase and leasing of vehicles, underwriting and administering insurance agreements, warranty programs, prepaid maintenance agreements, and debt cancellation agreements in the USPTO under Registration No. 2,851,110, which was issued on June 8, 2004. ¶ 19.

Defendants Natural Health Trends Corp. and Lexxus International, Inc.[3] have engaged in the advertising, promotion, distribution, offering for sale, and sale of a variety of sexual enhancement products, cosmetic and personal care products, beverages, and "nutriceuticals" under the trademark LEXXUS alone and in combination with other words. ¶ 21. Defendants have also used the domain names <mylexxus.com> and <lexxusinternational.com>, and the trade name LEXXUS INTERNATIONAL, INC. in the State of California and interstate commerce. Id. Defendants market their products under the trademarks, domain names, and trade name in question by using sexually suggestive photographs and copy. Id. Defendants commenced use of the trademark, domain names, and trade name with knowledge of Toyota's ownership and prior use and with the intent to benefit commercially from an association with the fame and reputation associated with Toyota's LEXUS mark. ¶ 22.

Defendants' use of the trademark, domain names, and trade name blurs and tarnishes the distinctive qualities of Toyota's famous mark. ¶ 23. Defendants' use of the trademark, domain names, and trade name impugns the reputation for excellence symbolized by the LEXUS mark. ¶ 26. Toyota is deprived of its lawful right to control the reputation for excellence and high quality symbolized by the LEXUS mark. Id. The probable tendency of Defendants' conduct is the confusion or deception of the public through the misrepresentation that Defendants' products are in some way sponsored by, affiliated with, or approved by Toyota. ¶ 27.

---

[3] The Court refers to Defendants collectively as "Defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

On November 1, 2004 Toyota filed this Complaint alleging the following causes of action: (i) trademark and service mark dilution in violation of the Lanham Act and California Business & Professions Code §14330; (2) unfair competition in violation of the Lanham Act, California Business & Professions Code §17200, and common law; (3) trademark and service mark infringement in violation of the Lanham Act and common law; and (4) trade name infringement in violation of the common law.

## IV. ANALYSIS

### A. Federal Trademark & Service Mark Dilution Claim

A plaintiff is entitled to relief under the Federal Trademark Dilution Act if it can establish that "(i) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; . . . and [(4)] there is actual harm to the trademark holder . . . ." Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1010 (9th Cir. 2004) (internal citations and quotations omitted). In addition, the marks must be "identical or nearly identical" to establish a claim for dilution. Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 905 (9th Cir. 2002); Playboy Enters., Inc. v. Welles, 279 F.3d 796, 806 (9th Cir. 2002). In the dilution context, likelihood of confusion is irrelevant. Thane Int'l Inc., 305 F.3d at 904.

Defendants argue that Toyota has failed to allege that the marks are identical or very similar. The Court disagrees. Toyota has alleged that it uses the mark LEXUS and that Defendants use the mark LEXXUS.[4] The two marks' near identity in sight and sound is self-evident. Whether the two marks are sufficiently identical to support a dilution claim is a matter for another day. Courts have recognized even more dissimilar marks to be sufficient to support a dilution claim. E.g., Thane Int'l, Inc., 305 F.3d at 907 (a reasonable factfinder could conclude TREK and ORBITREK marks are nearly identical); Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 469 (7th Cir. 2000) (HERBROZAC and PROZAC marks to be sufficiently similar). Therefore, the Court finds the marks to be similar enough to withstand Defendants' Motion to Dismiss.

Defendants also argue that Toyota has failed to allege actual dilution. The Supreme Court has held that actual dilution, as opposed to a likelihood of dilution, must be shown to prevail under federal law. Moseley v. Victoria Secret Catalogue, Inc., 537 U.S. 418, 433 (2003). Actual dilution is shown when "use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and

---

[4] The Court recognizes that Defendants do not capitalize all of the letters and does not find this to be a critical distinction for these purposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

services." Sony Computer Entm't, Inc. v. Connectix Corp., 203 F.3d 596, 608 (9th Cir. 2000) (internal citations and quotations omitted); accord 15 U.S.C. § 1127 (defining dilution). "[W]here the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." Moseley, 537 U.S. at 433.

"Courts recognize two principal forms of dilution: tarnishing and blurring. Dilution by tarnishing occurs when a junior mark's similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product. Dilution by blurring . . . occurs when consumers see the plaintiff's mark used on a plethora of different goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." Eli Lilly & Co., 233 F.3d at 466 (internal citations and quotations omitted).[5]

Toyota has alleged that Defendants' actions "blur and tarnish the distinctive qualities of Plaintiffs' famous mark LEXUS." Compl. ¶ 23. Toyota has also alleged Defendants use sexually suggestive photographs and copy in association with the LEXXUS mark. Id. ¶ 21. The Court finds these allegations sufficient to put Defendants on notice of Toyota's claim of actual dilution. At the pleading stage, Toyota is not required to present expert testimony or survey evidence to show actual dilution. Toyota has met its burden of providing a short and plain statement of its claim showing that it is entitled to relief. Whether Toyota can prove actual dilution and near identity of the marks will be addressed at a later stage in the litigation.

### B. California Dilution Claim

The California Anti-Dilution Statute provides:
Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods and services.

Cal. Bus. & Prof. Code § 14330. The California statute differs from the federal statute in that it only requires a showing of likelihood of dilution. See Grey v. Campbell Soup Co., 650 F. Supp. 1166, 1175 (C.D. Cal. 1986). Otherwise, the dilution analysis is the same. Nissan Motor Co., 378 F.3d at 1015. The Court finds Toyota has stated a claim for

---

[5] Defendants argue in passing that tarnishment is not a viable theory of dilution under federal law, relying on dicta in Moseley, 537 U.S. at 432. Because Toyota pleads both blurring and tarnishment, the Court does not address this issue further.

dilution under § 14330.[6]

### C. Trademark, Service Mark, and Trade Name Infringement

"To maintain an action for trademark infringement . . . a plaintiff must prove the defendant's use of the same or similar mark would create a likelihood of consumer confusion." Murray v. Cable Nat'l Broad. Co., 86 F.3d 858, 860 (9th Cir. 1996).[7] "A likelihood of confusion exists when a consumer viewing a . . . mark is likely to purchase the [goods] under a mistaken belief that the [goods] are, or [are] associated with, the [goods] of another provider." Id. at 861. When goods are related, likelihood of confusion is determined through the use of an eight factor test. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). While likelihood of confusion is generally regarded as a question of fact that plaintiffs are not required to prove at the pleading stage, "[i]f the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed." Murray, 86 F.3d at 860 (citing Toho Co., 645 F.2d at 790-91). "If the goods are totally unrelated, there can be no infringement because confusion is unlikely." Sleekcraft, 599 F.2d at 348.

Defendants argue that Toyota's infringement claims must fail because the products sold by Toyota under the LEXUS mark are completely unrelated to the products sold by Defendants. "Related goods are those goods which, though not identical, are related in the minds of consumers."[8] Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1363 (9th Cir. 1985). "The modern rule protects marks against any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner."

---

[6] Defendants argue that the holding of Moseley should affect how the California Supreme Court would interpret § 14330. The language of the California statute is clear that "*likelihood* of injury" is the standard. Cal. Bus. & Prof. Code § 14330. Regardless, the Court finds that, even under the "actual dilution" standard, Toyota has stated a claim for dilution.

[7] The likelihood of confusion test applies to infringement claims under both California and Federal trademark law. Toho Co. v. Sears, Roebuck & Co., 645 F.2d 788, 791 (9th Cir. 1981). The analysis is also the same for trademark and trade name infringement. Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1535 (9th Cir. 1989).

[8] Defendants argue that the purchaser of a $50,000 automobile is not likely to be confused as to the origin of its significantly less expensive products. Defendants' focus is too narrow. The Court must also consider whether the purchasers of Defendants' products might be confused.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

**PRIORITY SEND**

Bally Total Fitness Holding Corp. v. Faber, 29 F. Supp. 2d 1161, 1163 (C.D. Cal. 1998) (internal citations and quotations omitted). See Sleekcraft, 599 F.2d at 348 n.10.

Toyota sells automobiles, repair and maintenance services, vehicle leasing services, automobile financing services, cellular telephones, and a variety of promotional items[9] under the LEXUS mark. Defendants sell sexual enhancement products, cosmetic and other personal care products, beverages, and "nutriceuticals" under the LEXXUS mark. Toyota does allege that Defendants' acts are "likely to cause the public to believe that Defendants' products are in some way sponsored or approved by . . . Plaintiffs." Compl. ¶ 31. The Court cannot say under the expansive modern test that no reasonable consumer would think that Defendants' personal care products came from the same source as Toyota's ballpoint pens. Products that do not directly compete with one another may be protected from infringement, so long as the products are not wholly unrelated. Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 154-59 (9th Cir. 1963). "Related" products need not share the same physical or descriptive properties. Id. at 152; J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:6, at 24-14 (4th ed. 2004) ("'Related' does not means [sic] that there is necessarily any physical relationship between the goods or services . . . .").

"There is indeed a limit; the goods on which the supposed infringer puts the mark may be too remote from any that the owner would be likely to make or sell. It would be hard, for example, for the seller of a steam shovel to find ground for complaint in the use of his trade-mark on a lipstick." L.E. Waterman Co. v. Gordon, 72 F.2d 272, 274 (2d Cir. 1934) (razor blades and fountain pens were sufficiently related). While the outer limits of the relatedness doctrine may be hard to decipher, the Court finds that Defendants' products are not outside that limit as a matter of law. The result might be different if Toyota used its mark only to sell automobiles – or if this case had been filed twenty years ago. It has become an increasingly common practice, however, for trademark owners to license famous marks to sell a wide range of collateral products. Considering modern marketing tactics, the Court finds that personal care products are not so wholly unrelated from Toyota's promotional items that a reasonable consumer could never think they were somehow affiliated with Toyota. The connection might be weak, but such weakness will be taken into account in the Sleekcraft analysis at a later stage in the litigation. Toyota's trademark, service mark, and trade name infringement claims will not be dismissed for failure to state a claim.

---

[9] As stated above, Toyota's registered mark LEXUS & Design is used for a variety of items such as key rings, sunglasses, binoculars, clocks, ballpoint pens, umbrellas, drinking cups, and clothing. Compl. ¶.16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

### D. Unfair Competition Claim

Defendants argue that Toyota's unfair competition claims under both § 43(a) of the Lanham Act and California law are derivative of the infringement claims and must be dismissed as well. Likelihood of confusion is the dispositive issue not only for the infringement claims but also for federal and state unfair competition claims. See 15 U.S.C. § 1125(a)(1)(A); Thane Int'l, Inc., 305 F.3d at 901 n.3; Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178-80 (9th Cir. 1988); Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 975 n.90 (C.D. Cal. 2002). Because the Court has concluded that Toyota may be able to establish a likelihood of confusion, the Court also refuses to dismiss its unfair competition claim.

## V. CONCLUSION

For the reasons previously stated, the Motion is DENIED.

Initials of Preparer: